**SO ORDERED**

SIGNED this 20 day of April, 2023.



Pamela W. McAfee
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### FAYETTEVILLE DIVISION

IN RE:

| | |
|---|---|
| STEPHEN D. BEASLEY | CASE NO. 21-02322-5-PWM<br>CHAPTER 11 |
| COLORTEK COLLISION & CUSTOMS, INC. | CASE NO. 22-01178-5-PWM<br>CHAPTER 11 |
| DEBTORS | |

### ORDER ON SANCTIONS FOR PROFESSIONAL MISCONDUCT AND REPRIMAND

The matters before the court are the Applications for Compensation filed by the Sasser Law Firm in the cases of Stephen D. Beasley, D.E. 123, and Colortek Collision & Customs, Inc. (Colortek), Colortek D.E. 92,[1] the Motion Requesting Entry of an Order to Appear and Show Cause filed by the Bankruptcy Administrator (the BA) in Mr. Beasley's case, D.E. 152 (the Show Cause Motion), and the resulting Show Cause Order issued by the court, D.E. 155. The court entered an order on March 14, 2023, D.E. 205, Colortek D.E. 114 (the March 14 Order), determining that Mr. Travis Sasser failed to meet his obligations of candor to the court and setting a further hearing to consider appropriate sanctions. That further hearing was conducted on April

---

[1] References to the docket in the Stephen D. Beasley case herein will be noted as D.E. __, while references to the docket in the Colortek case will be noted as Colortek D.E. __.

13, 2023, in Raleigh, North Carolina. Ruling from the bench, the court announced that it would censure Mr. Sasser by entry of this reprimand, imposed a monetary sanction of $1,000, and allowed the Sasser Law Firm's applications for compensation, on the bases discussed below.

## PROCEDURAL BACKGROUND

Stephen D. Beasley filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on October 18, 2021. On motion of the debtor filed on June 2, 2022, the case was converted to one under chapter 11 of the Bankruptcy Code on June 29, 2022. At all times while his case was pending under chapter 13, the Sasser Law Firm (the Firm) represented Mr. Beasley. Travis Sasser, on behalf of Mr. Beasley, filed an application to employ Travis Sasser and the Firm in the chapter 11 case along with the motion to convert on June 2, 2022, and the court allowed the application by order dated July 1, 2022. D.E. 58, D.E. 72.

Colortek, an entity owned and controlled by Mr. Beasley, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 1, 2022. On June 2, 2022, Mr. Sasser and the Firm filed an application to be employed as attorney for Colortek, which the court allowed by order dated July 5, 2022. Colortek D.E. 8, 34.

As a result of events described in the March 14 Order, the Firm filed motions to withdraw as counsel in both cases on October 28, 2022, D.E. 124, Colortek D.E. 93, which were allowed by orders dated October 31, 2022. D.E. 125, Colortek D.E. 94. The Applications for Compensation now before the court were also filed on October 28, 2022. The Application for Compensation filed in Mr. Beasley's case seeks attorneys' fees in the total amount of $12,695 (comprised of the $6,500 standard "no-look" fee for the chapter 13 case[2] and $6,195 in fees for the chapter 11 case) and

---

[2] As noted in the March 14 Order, the Firm agreed that funds on hand with the chapter 13 trustee at the time of conversion could be paid toward the outstanding postpetition domestic support obligation owed to Ms. Brenda Beasley. Otherwise, the chapter 13 attorneys' fees would have been paid to the Firm at that time.

2

expenses in the amount of $1,270 (comprised of the $313 filing fee, the $25 credit counseling fee, and the $932 conversion fee). D.E. 123. The Application for Compensation filed in the Colortek case seeks attorneys' fees in the total amount of $15,368 and expenses in the amount of $1,738, and notes that the Firm is holding a $7,000 retainer.[3] Colortek D.E. 92. In sum, for both cases the Firm seeks attorneys' fees in the amount of $28,063 and expense reimbursement in the amount of $3,008.

The BA filed objections to both Applications for Compensation on December 2, 2022, D.E. 146, Colortek D.E. 104. The BA does not object to the amount or specific line items requested, but instead objects to the Applications for Compensation on the bases of (1) whether the Firm was not disinterested and should not have been approved as counsel based on the facts outlined in the March 14 Order, and (2) whether denial of the requested fees is an appropriate sanction for the misconduct described in the March 14 Order.

After a hearing conducted on January 24, 2023, the court entered the March 14 Order, in which it found that Mr. Sasser engaged in professional misconduct by failing to meet his obligations under North Carolina RPC 3.3(a) and 3.3(b), Candor Toward the Tribunal. The March 14 Order set a separate hearing at which the court would hear further evidence and argument as to the appropriate sanction and would consider at that time both mitigating and aggravating evidence, including, to the extent there are documented findings of fact and conclusions of law, evidence of a pattern of conduct and other sanctions imposed against Mr. Sasser. The March 14 Order further provided that the court would consider the amount and type of sanctions imposed by other disciplinary authorities and courts for similar misconduct by attorneys, and that the sanctions the court would consider imposing included monetary sanctions, denial of fees, disgorgement of

---

[3] The Colortek case was dismissed shortly after the Firm withdrew as counsel, and the Firm's Application for Compensation is the only matter remaining in that case.

any fees received, censure, and reprimand. Suspension and disbarment were neither requested nor considered.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(1) that this court is authorized to hear and determine. The United States District Court for the Eastern District of North Carolina has referred this case and this proceeding to this court under 28 U.S.C. § 157(a) by its General Order of Reference entered on August 3, 1984. This proceeding is constitutionally core, and this court may enter final orders herein. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Bankruptcy courts, like Article III courts, have an inherent power to impose sanctions against parties or attorneys that appear or practice before them. *See In re Lewis*, No. 14-1881, 611 F. App'x 134 (4th Cir. June 9, 2015) (unpublished). This power is derived from the court's need to "'manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases,'" and includes "the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). "The federal courts may and should hold attorneys appearing before them to recognized standards of conduct in their jurisdictions." *In re Computer Dynamics, Inc.*, 252 B.R. 50, 64 (Bankr. E.D. Va. 1997) (citing *In re Finkelstein,* 901 F.2d 1560, 1564 (11th Cir. 1990)).

This district has adopted a Local Rule incorporating the Rules of Professional Conduct of the North Carolina State Bar (as adopted by the Supreme Court of North Carolina), which provides that for misconduct as defined in the Local Rules, after notice and an opportunity to be heard, any

attorney practicing before the court may be disbarred, suspended from practice, reprimanded, or subjected to such other disciplinary action as the circumstances may warrant. *See* E.D.N.C. LBR 2090-2.

The January 24, 2023 hearing was preceded by adequate notice and an opportunity to prepare a defense as required by the Fourth Circuit under *United States Trustee v. Delafield*, 57 F.4th 414, 419-20 (4th Cir. 2023), and *Nell v. United States*, 450 F.2d 1090, 1093 (4th Cir. 1971). The Show Cause Motion clearly set forth allegations of attorney misconduct and the sanctions sought, and Mr. Sasser's response addressed those issues specifically. There was adequate time between the filing of the Show Cause Motion and the hearing to allow Mr. Sasser to prepare a defense and to retain counsel, which he elected not to do. Similarly, the April 13, 2023 hearing was preceded by adequate notice and an opportunity to prepare a defense, with all possible consequences having been identified in the March 14 Order.

### ADDITIONAL EVIDENCE PRESENTED AT THE APRIL 13 HEARING

Mr. Sasser was represented at the April 13, 2023 hearing by his brother and law partner, Mr. Philip Sasser. Mr. Sasser presented testimony in his own defense, supported by exhibits, regarding the high number of chapter 13 cases filed in this district by the Firm and the extent to which Mr. Sasser routinely provided information and pre- and post-confirmation updates to the offices of the trustee and BA in those cases as required by the local rules and the initial order sent to debtors.

More specifically, Mr. Sasser testified that he has been licensed to practice law since 1999 and certified as a specialist in consumer bankruptcy law since 2004. He routinely speaks at local and national conferences and seminars on bankruptcy and professionalism topics and has published several articles. He has undertaken appellate work on a *pro bono* basis, and has assumed

representation in cases for attorneys whose practice was interrupted for one reason or another. He also takes on controversial positions before the court, often at great financial cost to the Firm, because he firmly believes that the law (or at least the court's interpretation of it) needs to be changed.

Mr. Sasser emphasized the "market share" that he and the Firm have of chapter 13 cases in this district, noting that they file a significant percent (7%) of those cases, and that he believes he more routinely complies with the requirements to seek court approval of certain transactions and to send "update" emails to the chapter 13 trustee than other attorneys. He testified that he personally has sent approximately 300 emails to the chapter 13 trustees with client updates since 2017.

Mr. Sasser also testified that neither he nor the Firm received any benefit (financial or otherwise) as a result of the failure to disclose that is the subject of the March 14 Order, and that there was no intent to hide the transfer of the Corvette. He does not believe that the nondisclosure harmed any party but acknowledged that if the case had converted to chapter 7, there may have been an impact on the ability of the estate to recover the value of the transfer as a result of the delay. It was Mr. Sasser's opinion that the transfer of the Corvette was more important than the lack of disclosure.

Mr. Sasser testified that he has never faced disciplinary action before and has never had a penalty or sanction imposed. On cross-examination, he elaborated on this issue when asked about a sanction imposed from the bench in another case in this district (discussed below), noting that he does not believe that "attorney misconduct" was at issue in that matter.[4]

---

[4] No written order has been entered in that matter to date.

Finally, Mr. Sasser expressed his regret that he did not counsel Mr. Beasley that the transaction needed to be promptly disclosed, even as Mr. Beasley sought to quietly undo it. He acknowledged that the fact of having a client who was "not easy" and somewhat difficult to deal with in no way excused his failure to do more, at the relevant time. He also testified that he felt chastened, educated, and more aware of his responsibilities after the BA's challenge to his conduct and entry of the March 14 Order, and that he appreciated the court's thorough analysis and would incorporate it into his future practice.

## ADDITIONAL FACTS AVAILABLE TO THE COURT

After entry of the March 14 Order, Mr. Beasley filed a Notice of Waiver of Discharge, D.E. 212, which was approved by the court on March 30, 2023, after determining at a hearing that the waiver was voluntary, knowing, informed, and made with awareness of the consequences of foregoing a discharge in bankruptcy. D.E. 221.

In addition, as briefly referenced above, a monetary sanction against Mr. Sasser in the amount of $10,000 was announced from the bench by Chief Judge David M. Warren on November 2, 2022, in the case of *In re Sugar*, Case No. 19-4279. While there are many factual distinctions, that case also involved a chapter 13 debtor's failure to provide notice and obtain court approval of a transfer of property and a failure to disclose the transfer. *See In re Sugar*, Case No. 19-4279, 2023 WL 1931078, Order Dismissing Case and Barring Future Petitions (Bankr. E.D.N.C. Feb. 10, 2023). Although the court entered its order addressing the debtor's actions and the consequences thereof, no written order has yet issued in that case as to the sanction against Mr. Sasser, so this court cannot speak to the precise basis or bases on which that sanction rests.

## DISCUSSION

**1. Sanctions**

Having previously made a finding of professional misconduct by Mr. Sasser based upon his failure to act with candor to the court as required by Rule 3.3(a) and (b), the court turns to a consideration of the circumstances that either aggravate or mitigate the sanction to be imposed in consequence of that conduct. At the hearing, both Mr. Sasser and the BA relied upon the standards for imposing lawyer sanctions outlined by the American Bar Association, which this court agrees are appropriate in this context. In full, those standards provide as follows:

> 9.2 Aggravation
> 
> 9.21 Definition. Aggravation or aggravating circumstances are any considerations of factors that may justify an increase in the degree of discipline to be imposed.
> 
> 9.22 Factors which may be considered in aggravation. Aggravating factors include:
> (a) prior disciplinary offenses;
> (b) dishonest or selfish motive;
> (c) a pattern of misconduct;
> (d) multiple offenses;
> (e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency;
> (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
> (g) refusal to acknowledge the wrongful nature of conduct;
> (h) vulnerability of victim;
> (i) substantial experience in the practice of law;
> (j) indifference to making restitution;
> (k) illegal conduct, including that involving the use of controlled substances.
> 
> 9.3 Mitigation
> 9.31 Definition. Mitigation or mitigation circumstances are any considerations of factors that may justify a reduction in the degree of discipline to be imposed.
> 
> 9.32 Factors which may be considered in mitigation. Mitigating factors include:
> (a) absence of prior disciplinary record;
> (b) absence of a dishonest or selfish motive;
> (c) personal or emotional problems;

      (d) timely good faith effort to make restitution or to rectify consequences of misconduct;
      (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
      (f) inexperience in the practice of law;
      (g) character or reputation;
      (h) physical disability;
      (i) mental disability or chemical dependency including alcoholism or drug abuse . . . ;
      (j) delay in disciplinary proceedings;
      (k) imposition of other penalties or sanctions;
      (l) remorse; [and]
      (m) remoteness of prior offenses.

American Bar Ass'n Standards for Imposing Lawyer Sanctions, Sec. 9. The North Carolina State Bar Disciplinary Hearing Commission considers similar factors in imposing the appropriate discipline. *See* 27 N.C.A.C. 1B.0116(f)(3). These standards provide a fulsome list of factors commonly considered by courts in imposing sanctions for a range of lawyer misconduct.

Based on the evidence outlined above as well as the arguments of counsel, the court finds that Mr. Sasser's substantial experience in the practice of law is an aggravating factor. The court finds the absence of a prior disciplinary record; the absence of a dishonest or selfish motive; Mr. Sasser's reputation; the $10,000 sanction imposed in *Sugar*; and Mr. Sasser's candid acknowledgment of the mistakes that were made in this case to be mitigating factors.

There are additional important facts that do not necessarily weigh in either direction, or arguably weigh in both: first, at least partially as a consequence of the undisclosed transfer, Mr. Beasley did not achieve a discharge in his bankruptcy case. The court cannot weigh this in either direction because whether Mr. Beasley would have received a discharge had the transfer been disclosed and avoided sooner is a matter of speculation. Similarly, the BA contends that the bankruptcy estate incurred attorney's fees related specifically to the failure to disclose the transfer,

9

but the court cannot make a finding that these fees are a result of Mr. Sasser's conduct or Mr. Beasley's conduct, or a combination of the two.

In determining an appropriate sanction, the court also reviewed disciplinary cases in a variety of contexts, all involving sanctions ranging from censure and costs of $500 to significant monetary sanctions and disbarment. In the most analogous case, *In re Gulczynski*, Case No. 05-21435-RAG, 2008 WL 906816 (Memorandum Opinion) (Bankr. D. Md. April 3, 2008) (unpublished disposition), which was discussed at length in the March 14 Order, the Disciplinary and Admissions Committee for the United States District Court for the District of Maryland ultimately imposed the sanction of an official reprimand. In another attorney discipline case the court finds to be comparable, *Board of Professional Responsibility v. Custis*, 348 P.3d 823, 836 (Wy. S. Ct. 2015), the Wyoming State Bar imposed on counsel a sanction consisting of public censure, an administrative fee of $500, and court costs of $1,827.72 based on the attorney's violation of rules of conduct requiring, among other things, candor to the tribunal.[5]

Taking all of these things into consideration, and as the court announced from the bench at the conclusion of the hearing, the appropriate sanction in this matter consists of a monetary sanction in the amount of $1,000 and a reprimand. Notwithstanding the BA's request that the reprimand be issued as a published opinion, the court declines to do so. The court has further determined that neither a denial of fees nor the imposition of additional continuing legal education requirements in professional responsibility would be appropriate in this instance. The reasons for the court's determination are many, and are based upon not only the April 13 hearing, but on the

---

[5] The attorney in *Custis* signed and submitted a brief containing a material misrepresentation and including a quote without attribution in such a way as to suggest that the testimony of a forensic interviewer in a different criminal case was from the case at hand, then maintained that the misrepresentation was caused by his paralegal's drafting error. On these facts, the tribunal concluded that the attorney failed to meet his obligation to "prevent the trier of fact from being misled by false evidence." *Id*. at 832.

court's familiarity with Mr. Sasser and his representation of his clients over two decades as a fellow member of the bar of the Eastern District of North Carolina.

As noted in the March 14 Order, the bankruptcy process requires transparency. In exchange for the automatic stay, a discharge, and the discharge injunction, debtors must disclose detailed financial information and subject themselves to additional reporting and sometimes approval of financial transactions for varying periods of time depending on the chapter of the Bankruptcy Code under which they filed. Mr. Sasser's testimony established that the Firm's clients routinely comply with the reporting and approval rules notwithstanding that he believes many of them are inappropriate overreach by the court, signaling that the Firm as part of its practice counsels its clients regarding these obligations. The issue before the court in this case is not that the Firm counseled Mr. Beasley to violate a rule or even failed to advise him of those rules, but instead what action should have been taken by Mr. Sasser when he learned that Mr. Beasley had engaged in a transaction without complying with the rules and obtaining court authority for the transfer. It is at that precise point that RPC 3.3(a) and 3.3(b) came into play, and it is Mr. Sasser's failure to take appropriate steps to either advise Mr. Beasley regarding his disclosure obligations, or to disclose or withdraw if Mr. Beasley refused, that runs afoul of the Rules of Professional Conduct.[6]

## 2. Objection to Fees Under § 328

In addition to requesting denial of fees as a sanction for misconduct, the BA also objected to the Applications for Compensation under 11 U.S.C. § 328, contending that the Firm was not disinterested when the applications to employ were allowed, as it held an interest adverse to the chapter 11 estates. Specifically, Mr. Sasser and the Firm's knowledge that the Corvette had been

---

[6] Sometimes the failure to follow the rules is an honest error. However, in those cases where a client is aware of the rules and intentionally disregards them, counsel should give the issue heightened attention to ensure compliance with RPC 3.3. In either case, disclosure is required.

transferred without authority created an adverse interest, as the estate was depleted by that transfer. The BA also suggested that in many cases, including this one, the chapter 13 debtor is adverse to the chapter 13 estate, and reasons further that counsel for the chapter 13 debtor would then be adverse to the chapter 11 estate upon conversion. Mr. Sasser, on the other hand, maintained that because Mr. Beasley's debts were primarily priority debts that were required to be paid through the plan, his interest was aligned with the chapter 13 estate in this case.

Section 328(c) provides that "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 . . . if, at any time during such professional person's employment . . . , such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c). The statute is written in the permissive.

There are many "what-ifs" in this case, including whether the Firm would have been employed in either chapter 11 case had the timing of Mr. Sasser's knowledge of the transfer of the Corvette been disclosed at the time. Under these circumstances, the court will not speculate as to what might have happened differently, but simply finds that denial of fees either under § 328 or as a sanction would be excessively punitive in this case, particularly in view of the existing sanction noted above.

## CONCLUSION

The court finds that Mr. Sasser has engaged in professional misconduct by failing to meet his obligations under both RPC 3.3(a) and 3.3(b), Candor Toward the Tribunal. In light of the aggravating and mitigating factors outlined above, as well as other sanctions imposed against Mr. Sasser, the court imposes as a sanction this REPRIMAND, as well as the monetary sanction of

$1,000, payable to the Clerk of Court within 14 days of the date of this order. The Firm's applications for compensation are approved and separate orders will be entered in each case.

As contemplated by 27 N.C.A.C. 1B.0120, the Clerk is directed to forward a copy of the March 14 Order and this Order to the North Carolina State Bar.

**END OF DOCUMENT**